**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARLOS V.,<br>Plaintiff,<br>v.<br><br>FRANK J. BISIGNANO,[1]<br>Commissioner of Social Security,<br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br>No. 23-3948 |

**MEMORANDUM OPINION**

**PAMELA A. CARLOS
U.S. MAGISTRATE JUDGE** **November 17, 2026**

Plaintiff Carlos V. appeals the Commissioner of Social Security's final decision to deny his claim for benefits. In particular, he contends that the unfavorable decision improperly assessed his subjective allegations of his symptoms under the regulations and failed to sufficiently explain the evaluation of the opinion evidence contained in the record. The Commissioner disagrees, arguing that the decision to deny benefits comported with the governing regulations and is supported by substantial evidence. For the reasons that follow, I agree with the Commissioner, and Plaintiff's request for review is denied.

## I. BACKGROUND

### A. Factual and Procedural History.

Plaintiff was born in November 1970, meaning he was a younger individual at the time of his alleged onset date. *See* R. 66. The highest level of schooling that he completed was eighth

[1] Frank J. Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank J. Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

grade. *See* R. 311. For over twenty years, he worked as a sheet metal mechanic, hanging the ducts for air conditioner units, which could weigh well over one hundred pounds. *See* R. 56–57, 311. But in May 2019, Plaintiff injured his back at work when he was engaging in heavy lifting. *See* R. 496. He ultimately stopped working by September of that year. *See* R. 310.

Almost a year and a half later, on January 29, 2021, Plaintiff applied for disability insurance benefits ("DIB"). *See* R. 67. In his application, he alleged that he was disabled based on lumbar spine impairment, right leg impairment, high blood pressure, diabetes, status-post lumbar spine surgery, and status-post COVID-19. *See id.* His disability claim was initially denied on May 19, 2021, *see* R. 91–94, and again on reconsideration on October 29, 2021, *see* R. 105–06. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), *see* R. 110–11, and a telephone hearing was held on April 21, 2022, *see* R. 38–65 (hearing transcript). After this hearing, on May 3, 2022, the ALJ issued a written decision denying Plaintiff's claim. *See* R. 18–32. The Appeals Council denied Plaintiff's subsequent request for review, meaning the ALJ's written opinion became the final decision of the Commissioner. *See* R. 1–3. Plaintiff now timely appeals.[2]

### B. ALJ's Decision.

The ALJ evaluated Plaintiff's claim using the five-step sequential analysis set forth in the Social Security regulations.[3] Beginning at step one, the ALJ determined that Plaintiff did not

[2] The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings, including the entry of a final judgment, pursuant to 28 U.S.C. § 636(c). *See* Doc. Nos. 3, 4.

[3] The sequential analysis requires the ALJ to evaluate (1) whether the claimant's work, if any, qualifies as "substantial gainful activity"; (2) whether the claimant's medically determinable impairments are severe; (3) whether any of the claimant's impairments "meet or equal the requirements for impairments listed in the regulations"; (4) whether the claimant is able to perform "past relevant work" considering his residual functional capacity; and (5) whether the claimant can adjust to other work considering his residual functional capacity, age, education, and work experience. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (citing 20 C.F.R. § 416.920(a)(4)(i)–(v)). The claimant has the burden of proof at steps one through four, and then at step five, the burden shifts to the Commissioner of Social Security. *Id.* at 201.

engage in substantial gainful activity since the alleged onset date—September 1, 2019.[4] *See* R. 20.

At step two, the ALJ found that Plaintiff suffered from five severe impairments: degenerative disc disease of the lumbar spine, status post-laminectomy at the L5-S1 level; diabetes; inguinal hernia and umbilical hernia, status post-surgery; fatty liver disease; and obesity. *See* R. 20–23. His history of a knee impairment, irritable bowel syndrome, hypertension, COVID-19 symptoms, and anxiety were deemed non-severe because they had not caused more than minimal limitations on his ability to work. *Id.* His alleged vertigo and arthritis of the elbows were found to be not medically determinable due to the lack of evidence in the record. *Id.*

Moving on to step three, the ALJ concluded that none of Plaintiff's severe impairments alone, or in combination, met or medically equaled the requirements of the impairments listed in the regulations. *See* R. 23–24. Specifically, the ALJ compared Plaintiff's impairments to the impairments included in Listings 1.15 or 1.16 (spine disorders) and 5.05 (chronic liver disease). *Id.* For the impairments that did not correspond exactly to any of the Listings, the ALJ considered the Social Security Administration's guidance, along with the Listing or group of Listings that most closely resembled the impairment. *Id.*

Before reaching step four, the ALJ considered Plaintiff's residual functional capacity ("RFC").[5] After reviewing the objective medical evidence and the subjective opinions in the

---

[4] The ALJ also noted that Plaintiff's date last insured was December 31, 2021. *See* R. 20. To be eligible for disability insurance benefits, the claimant "must establish that their disabling condition(s) began on or before the last day they were insured for disability purposes." 2 SOC. SEC. DISABILITY CLAIMS: PRAC. & PROCEDURE § 22:251 (2d ed. Oct. 2022 update).

[5] Residual functional capacity is defined as "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1).

record, the ALJ determined that Plaintiff has the RFC to perform "light work,"[6] subject to the following restrictions:

> [H]e can frequently climb ramps or stairs; can never climb ladders, ropes, or scaffolds; can occasionally stoop, crouch, kneel, and crawl; must avoid concentrated exposure to extreme cold, vibrations, driving vehicles, unprotected heights, and moving machinery.

*See* R. 24–30.

At step four, the ALJ found that given Plaintiff's RFC, he could not perform his past relevant work as a sheet metal worker, which he performed at the heavy exertional level. *See* R. 30–31.

The ALJ then proceeded to step five and identified multiple jobs in the national economy that Plaintiff could perform, including fishing reel assembler, weight tester, and dowel inspector—all of which are performed at the sedentary exertion level.[7] *See* R. 31–32.

---

[6] The regulations define "light work" as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* More specifically, the Social Security Administration has instructed that "light work generally requires the ability to stand and carry weight for approximately six hours of an eight hour day." *Fargnoli v. Massanari*, 247 F.3d 34, 40 (3d Cir. 2001) (quoting *Jesurum v. Sec'y of Health & Human Servs.*, 48 F.3d 114, 119 (3d Cir. 1995)); *see also* SSR 83-10, 1983 WL 31251 (Jan. 1, 1983).

[7] Curiously, the ALJ found the Plaintiff capable of performing a limited range of light work, yet only cited to sedentary level jobs that he could perform as proof that he was not disabled. It is unclear why the ALJ opted to cite to these jobs and not the jobs performed at the light exertional level provided by the vocational expert. But the undersigned does not take lightly Plaintiff's previous suggestions that had he been found capable of only performing sedentary-level jobs, the ALJ would have been obligated to find him disabled under the Grids after his 50th birthday in November 2020. *See* R. 370, 376. Though Plaintiff has not raised this as a basis for error on appeal (and this may have been a reasonable choice as it is not entirely clear there is any such viable claim), the undersigned warns the ALJ, and the Social Security Administration generally, that it is ***not*** appropriate to circumvent a Grid finding of disability by designating a plaintiff as capable of light work but then identify only sedentary level jobs. Having no evidence that this is what happened here, I will assume that that was not the reason for the ALJ's confusing decision.

As such, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.[8] *See* R. 32.

## II. STANDARD OF REVIEW

Judicial review of a social security disability determination is "limited." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). The agency's factual findings are "conclusive," and therefore must be upheld, if they are supported by "substantial evidence." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019) (citing 42 U.S.C. § 405(g)). Substantial evidence is not a demanding standard. *Id.* at 1154. All it means is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1153 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford*, 399 F.3d at 552 (quoting *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971)). When reviewing for substantial evidence, courts cannot "re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). However, any legal conclusions are reviewed under a plenary standard. *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 208 n.10 (3d Cir. 2019).

## III. DISCUSSION

Plaintiff appeals the ALJ's unfavorable decision on two grounds. *See* Doc. No. 9, at 5–12. First, he claims that the ALJ improperly evaluated his subjective complaints of pain under the regulations. *Id.* at 5–9. Second, he alleges that the ALJ's explanation for why some of the opinion evidence was either persuasive or not persuasive was "inconsistent," and therefore

---

[8] Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

legally insufficient. *Id.* at 9–12. The Commissioner responds that the ALJ's decision was reasonable and supported by substantial evidence. *See* Doc. No. 10, at 7–16. After careful review, I agree with the Commissioner that neither of Plaintiff's claims justify relief.

**A. The ALJ properly considered Plaintiff's subjective complaints of pain.**

In his initial claim, Plaintiff takes issue with the ALJ's assessment of his subjective complaints of pain at the RFC stage.[9] *See* Doc. No. 9, at 5–9. Specifically, he argues that the ALJ's explanation as to why his allegations of pain were "not entirely consistent" with the other evidence of record was not sufficient: the ALJ only discussed Plaintiff's abilities to perform certain daily activities, and even in doing so, the ALJ "strongly mischaracterized" his testimony. *See id.* at 6. But having reviewed the relevant law and the underlying record, I find that the ALJ did not err in her analysis of Plaintiff's subjective complaints of pain.

The ALJ began her RFC assessment with a summary of Plaintiff's allegations of his symptoms and how he believed they impacted his ability to work. *See* R. 25–26 (summarizing hearing testimony and function report). The ALJ then rejected the extent to which Plaintiff claimed his pain limited him because, in her opinion, it was "not entirely consistent" with the objective medical evidence and the other evidence in the record. *See* R. 26. To support this conclusion, the ALJ exhaustively provided a narrative of the medical evidence contained in the record, starting with the results from Plaintiff's 2019 lumbar spine MRI and ending with a summary of Plaintiff's October 2021 appointment with his primary care doctor. *See* R. 26–27.

[9] In litigating this claim, Plaintiff's counsel repeatedly references the ALJ's "credibility" determination and the legal framework that purportedly governs. *See generally* Doc. No. 9, at 5–9. However, starting in March 2017, the Social Security Administration eliminated "the use of the term 'credibility'" from their policies. *See* SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017). The purpose of this change was to clarify that ALJs are expected to evaluate the claimant's subjective symptoms, not judge the claimant's character. *Id.* Consistent with this change, the ALJ, here, never made any credibility determination, but instead evaluated Plaintiff's subjective allegations of his symptoms in accordance with the regulations and agency policy. Regardless, the essence of Plaintiff's argument remains, and it has been addressed fully above.

The ALJ also observed that Plaintiff's spine impairment had significantly improved after his surgery in June 2020, detailing the evidence that supported this conclusion. *See* R. 28–29. Similarly, the ALJ noted that Plaintiff's other impairments had also improved over the course of the relevant period and were adequately accommodated for in the RFC. *See* R. 29.

Plaintiff now challenges the ALJ's treatment of his complaints of pain. *See* Doc. No. 9, at 5–9. When deciding a claim for disability, the ALJ must consider a claimant's description of his pain and evaluate the extent to which that description is reasonably consistent with the objective medical and other record evidence. *See* 20 C.F.R. § 404.1529(a). Although a description of one's pain, without more, is not enough to establish disability, such allegations combined with objective medical evidence can lead to a favorable disability determination.[10] *See id.* To assess whether a claimant's pain is disabling, the ALJ must (1) determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce pain; and if so, (2) then evaluate the intensity, persistence, and limiting effects of that pain. *See* SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). At the second step of this analysis, the ALJ will consider not just the record medical evidence but also the claimant's daily activities; the location, duration, frequency, and intensity of the pain; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of pain medications; treatments, or other measures, taken for pain relief; and any other factors that concern the functional, limitations caused by the pain. *See id.* at *7.

---

[10] "There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may be reasonably accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled." 20 C.F.R. § 404.1529(a).

Here, Plaintiff insists that the ALJ failed to properly engage in this analysis when considering his complaints of pain. *See* Doc. No. 9, at 5–9. His argument is two-fold: first, he maintains that the ALJ did not sufficiently consider the "other evidence" in the record as required at the second-step of the analysis, and second, the analysis the ALJ did engage in was flawed because it "strongly mischaracterized" Plaintiff's testimony. *Id.* Neither is convincing.

Starting with his first contention, Plaintiff highlights that the only "other evidence" the ALJ discussed was his activities of daily living, not any of the other factors suggested by the regulations. *Id.* at 5–6. But the ALJ was not required to explicitly address every such factor; only those that are *relevant* to the case. *See* SSR 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017) ("We will consider other evidence to evaluate only the factors that are *relevant* to assessing the intensity, persistence, and limiting effects of the individual's symptoms. If there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor in the determination or decision because it is not relevant to the case." (emphasis added)). Moreover, a review of the entire decision reveals that the ALJ *did* consider additional, relevant factors: she summarized the various treatments Plaintiff had pursued for pain relief during the relevant period, as well as the medications he was prescribed and the various reports and descriptions of pain that were included in the medical records. *See* R. 26–29. Beyond this, Plaintiff has utterly failed to identify what *relevant* factor or evidence the ALJ should have—but did not—consider. He only, in a conclusory way, accuses the ALJ of not properly considering the "other evidence" in the record as required by the regulations. Simply put, this is not enough to support a claim for remand.

As for Plaintiff's second contention, he argues that the ALJ "strongly mischaracterized" his testimony about his ability to perform daily activities and improperly relied on that

mischaracterization as proof that his pain was not as limiting as he alleged. *See* Doc. No. 9, at 6–8. In particular, he takes issue with the ALJ's observation that he is capable of "independent personal care, driving, cooking, and traveling" because his hearing testimony and function report revealed that he struggled both with these tasks and with others. *Id.* at 6–7 (describing Plaintiff's testimony that he was unable to lift more than five-to-six pounds, sit or stand more than ten minuates, walk more than two blocks, used a cane approximately twenty days per month, required assistance with lifting grocery bags when he went shopping one or two hours per month for an hour or two at a time, had difficulty with putting on clothes and shoes and lifting legs into shower, needed to take breaks when doing daily chores of preparing small meals and washing dishes, only drove fifteen to twenty minutes per day to local diner, and spent most of day laying down due to symptoms). According to Plaintiff, this disparity demonstrates that the ALJ's decision lacked any support and prevented meaningful judicial review.[11]

I disagree. The ALJ accurately described *all* of the difficulties that Plaintiff references in his briefing. *See* R. 25–26. And many of those did not relate to the specific daily activities cited by the ALJ in support of her opinion. Indeed, the ALJ *only* referred to Plaintiff's admitted ability to do independent personal care, driving, cooking, and traveling to support her conclusions. Reviewing the ALJ's opinion as a whole, the undersigned finds the ALJ's decision to be

[11] Where, such as here, the ALJ assesses the claimant's allegations of pain as part of the RFC analysis, she must consider "all relevant evidence" and provide "a clear and satisfactory" explanation of her decision. *See Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001) (quoting *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). Such an explanation must contain enough detail to permit meaningful judicial review. *See Burnett*, 220 F.3d at 119–20. Otherwise, the reviewing court is unable to discern whether the ALJ's decision is supported by substantial evidence. *See Cotter*, 642 F.2d at 705. This is especially true when there is "conflicting probative evidence in the record." *See Fargnoli*, 247 F.3d at 42. While the ALJ may weigh the evidence and choose what evidence to credit, she cannot reject contradictory evidence for "no reason or the wrong reason." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Therefore, an adequate explanation is needed to ensure that the ALJ's reason for discounting significant contradictory evidence was proper. *Cotter*, 642 F.2d at 706–07.

sufficiently clear to permit meaningful judicial review and supported by substantial evidence.[12] Rather, it appears that Plaintiff is just asking the Court to reweigh all the evidence in the record in his favor. This is not permitted on appeal. *See Chandler*, 667 F.3d at 359.

For these reasons, Plaintiff's first claim is denied.

### B. The ALJ's evaluation of the medical opinion evidence was supported by substantial evidence.

Next, Plaintiff disputes the ALJ's reasons for finding the state agency reviewers' opinions to be more persuasive than the opinion of a one-time examining physical therapist. *See* Doc. No. 9, at 9–12. The Commissioner maintains that the ALJ's analysis of the opinion evidence was proper and supported by substantial evidence. *See* Doc. No. 10, at 13–16. After careful review, I agree with the Commissioner, and this claim too is denied.

The RFC determination is ultimately an administrative, not medical, decision that is reserved for the ALJ. *See* 20 C.F.R. § 404.1527(d)(2). But to reach this decision, the ALJ must first evaluate and weigh the medical opinions in the record. *See* SSR 96-5p, 1996 WL 374183, at *2–3 (July 2, 1996). As part of this analysis, the governing social security regulations[13] require ALJs to evaluate the persuasiveness of *all* medical opinions contained in the record.[14] *See* 20

[12] To the extent the ALJ may have over relied on Plaintiff's ability to do any one of these daily activities, the Plaintiff has not shown that any such error was harmful. The ALJ pointed to other daily activities that Plaintiff was able to complete, along with the medical evidence in the record, that supported her decision. I do, however, recognize that the ALJ's repeated reliance on the Plaintiff's alleged ability to travel (as evidence that he is capable of light work) to be misplaced. There are only fleeting references in the medical records of a single trip Plaintiff took to Honduras, his country of origin. There are no details about what he did there or what accommodations he needed, if any. Indeed, Plaintiff's counsel, at one point, suggested the trip was related to legal issues involving his divorce. Absent additional evidence, a single trip back to one's country of origin, with no context as to what activities he engaged in while there, provides little probative evidence of one's ability to perform light work. Regardless, if there was any error, it was harmless for the reasons described previously.

[13] Because Plaintiff's claim for social security benefits was filed after March 27, 2017, the new regulations regarding the evaluation of medical opinion evidence govern his claim. *See* 20 C.F.R. § 404.1520c.

[14] "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions in the following abilities: . . . . (i) [the] ability to perform physical demands of work activities, such as sitting, standing, walking,

C.F.R. § 404.1520c(a). The regulations advise that when conducting this analysis, the ALJ should consider, among other factors, the supportability of the opinion,[15] the consistency of the opinion,[16] the medical source's relationship with the claimant (e.g., the length, frequency, purpose, and extent of the relationship), and the medical source's specialization. *See id.* § 404.1520c(c). The most important of these factors are supportability and consistency. *See id.* § 404.1520c(b)(2).

Consistent with this regulatory framework, the ALJ evaluated the persuasiveness of the three medical opinions contained in the record, focusing largely on the relevant factors of consistency and supportability. *See* R. 29–30. *Id.* Two of the opinions came from state agency reviewing consultants, both of whom reviewed the available medical records and rendered an opinion as to Plaintiff's ability to perform work-related functions (one at the initial level, and one on reconsideration). *Id.* The ALJ explained:

> In May 2021, State medical consultant Dr. Kerri Aaron opined the claimant could perform light work except he could occasionally perform postural maneuvers. She cited a positive straight leg raise in 2021 but an otherwise generally normal gait; she noted a 2019

---

lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (ii) [the] ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (iii) [the] ability to perform other demands of work, such as seeing, hearing, or using other senses; and (iv) [the] ability to adapt to environmental conditions, such as temperature extremes or fumes." 20 C.F.R. § 404.1513.

[15] Supportability, in this context, refers to the "extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5833 (Jan. 18, 2017); *see also* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative finding(s) will be.")

[16] Consistency, as referenced in the regulations, refers to "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the [record]." *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5833 (Jan. 18, 2017); *see also* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

> lumbar spine MRI. (Exhibit 1A). This opinion is partially persuasive. The claimant's obesity persisted through 2021 despite improvement; he also showed ongoing radiculopathy despite showing generally normal sensation on examination. (Exhibits 16F, 19F). Therefore, the undersigned agrees the evidence is generally consistent with a limited range of light work. However, the evidence also supports further restrictions of never climbing ladders, ropes, or scaffolds and avoiding concentrated exposure to extreme cold, vibrations, driving vehicles, unprotected heights, and moving machinery.
>
> * * *
>
> In October 2021, State orthopedic consultant Dr. Edwin Malloy opined the claimant could perform light work except he could never climb ladders, ropes, or scaffolds; he could occasionally kneel, crouch, or crawl; he could frequently balance, stoop, and climb ramps and stairs; Dr. Malloy cited a previous laminotomy with continued low back pain and pain radiation to the right leg. He opined the claimant should avoid concentrated exposure to extreme cold, vibration, and hazards due to post-laminectomy syndrome. (Exhibit 4A). This opinion is persuasive. It is supported by the longitudinal evidence, which shows improvement in all of the claimant's severe impairments as of 2021; it is also consistent with examinations in 2021 showing unassisted gait, full strength, and normal reflexes. (Exhibits 16F, 19F). Finally, it is consistent with the claimant's reported activities of daily living, which include independent personal care, driving, and traveling. (Exhibits 3E, 10F, Hearing Testimony).

*See* R. 29, 30.

The final opinion was from a physical therapist who though associated with the office of Plaintiff's back surgeon, was not Plaintiff's treating physical therapist and had seemingly only examined Plaintiff on one occasion. The ALJ summarized the opinion and addressed its persuasiveness as follows:

> As noted above, the claimant presented for a Functional Capacity Evaluation in July 2021 with physical therapist Milton Erig. Mr. Erig concluded the claimant demonstrated the functional abilities to perform limited sedentary work, but he would need a multitude of job and ergonomic modifications for sitting, standing, walking, pushing and pulling limited to 5 pounds occasionally; carrying and lifting limited to five pounds occasionally; he would need to avoid

> kneeling, crouching, stooping, climbing, or crawling. He would need to change positions every 15 minutes from a seated position secondary to increased symptoms of pain. He took Percocet, which would affect his focus and attention. He would benefit from continued pain management as well as physical therapy to increase postural awareness, core stability, and lower and upper extremity muscle strength. (Exhibit 14F). This opinion is not persuasive. The claimant presented for a one-time evaluation with a non-treating provider, who is not an acceptable medical source. There is no indication Mr. Erig reviewed any medical records or objective findings. Though Mr. Erig concluded the claimant gave a "reliable effort," he also notes the claimant "declined to perform" numerous tests such as stooping, crouching, kneeling, or engaging with 20-pound weight. (Exhibit 14F). The claimant himself testified he can crouch but he cannot bend. (Hearing Testimony). He was capable of traveling out of the country in April 2021. (Exhibit10F). Therefore, Mr. Erig's conclusions are inconsistent with the claimant's other reported daily activities. The assessment is also inconsistent with objective findings on examinations; the claimant demonstrated normal strength in March, July, and October 2021 visits with treating providers. (Exhibits 16F, 19F). He could also walk unassisted and he reported no deficits in his attention, concentration, or memory as a result of pain medication. (Exhibits 3E, 16F, 19F). Therefore, the undersigned concludes the longitudinal evidence is more consistent with a limited range of light work allowing for postural and environmental limitations rather than a significantly reduced range of sedentary work.

*See* R. 29–30.

Plaintiff now challenges the adequacy and propriety of these explanations on multiple grounds. *See* Doc. No. 9, at 9–12. Primarily, he alleges that the ALJ failed to adequately explain why the opinions of state agency consultants, who only reviewed a portion of the medical records, were more persuasive than the more favorable opinion of a physical therapist, who actually examined the Plaintiff, albeit one time. *Id.* In addition, the Plaintiff argues that the ALJ improperly concluded that the physical therapist's opinion was inconsistent with the medical records. *Id.* These alleged errors were harmful, according to Plaintiff, because the ALJ ultimately assigned him a less restrictive RFC than recommended by the physical therapist. *Id.*

But looking at both the underlying medical records and the opinion as a whole, I find that the ALJ's assessment of the opinion evidence was reasonable and supported by substantial evidence. As to Plaintiff's concern with the ALJ's decision to find the state-agency reviewers' opinions to be more persuasive than the opinion of the consulting physical therapist, I am unpersuaded. To be sure, had the ALJ's *only* reason for discounting Mr. Erig's opinion been that he only examined Plaintiff on one occasion, this would have likely been improper. *See Blanca S. v. Bisignano*, No. 25-cv-3818, 2026 WL 688301, at *4 (E.D. Pa. Mar. 11, 2026). Indeed, the Social Security Administration routinely engages one-time examining consultants to assess claimants' conditions, and so "rejecting a consulting examiner's opinion for this reason nullifies the entire concept of a consulting expert." *Id.*

Yet the regulations demand that ALJs consider the medical source's relationship with the claimant—including the length and frequency of the relationship—as part of their persuasiveness analysis. 20 C.F.R. § 404.1520c(c). Therefore, it was certainly proper for the ALJ to address, as one part of her analysis, the fact that Plaintiff only consulted with the physical therapist on one occasion, thereby implying that this was not a frequent or long-established relationship that would warrant more reliance on the opinion. Though as Plaintiff points out, the ALJ did not explicitly acknowledge that the state agency reviewers were similarly not treating sources, this was unnecessary. It is understood by the nature of their engagement with the process that the state agency reviewers are consultants hired by the Social Security Administration to review medical records, not Plaintiff's treating or examining physicians. This was not error.

Nor was it error, as the Plaintiff suggests, for the ALJ to rely on the state agency reviewers' opinions even though they may not have had access to medical records that were submitted later in time. First, as a general matter, there will "always [be] some time lapse

between the consultant's report and the ALJ hearing and decision," and this alone is not enough to disregard the state agency reviewers' opinions. *See Chandler*, 667 F.3d at 361 ("The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's decision in reliance on it."). Second, even though he accuses the state agency reviewers of not "evaluat[ing] a majority of the medical findings in this case," *see* Doc. No. 9, at 10, Plaintiff does not point to any evidence that the state agency reviewers should have, but did not, consider. And my review of those opinions reveal that they had access to a substantial amount of the relevant records in the case, with Dr. Malloy citing to records from September 2021 in his reconsideration opinion. *See* R. 86. Therefore, Plaintiff has not demonstrated that it was error for the ALJ to rely on the state agency reviewers' opinions.

Turning finally to Plaintiff's arguments that the ALJ improperly found the physical therapist's opinion to be inconsistent with improved clinical findings, it is similarly unsuccessful. *See* Doc. No. 9, at 11–12. Plaintiff details the evidence that he believes supports the physical therapist's opinion. *Id.* But the ALJ considered all of that in her analysis, ultimately relying on other medical findings to support her opinion. The Court cannot now reweigh the evidence to come to a different conclusion.[17] *See Chandler*, 667 F.3d at 359.

Accordingly, Plaintiff's second claim is denied.

## IV. CONCLUSION

For the reasons explained above, Plaintiff Carlos V.'s request for review is **DENIED**. The ALJ properly evaluated both Plaintiff's subjective allegations of pain and the opinion

[17] To the extent that Plaintiff suggests that the ALJ erred by noting that the physical therapist was a nonacceptable medical source, this was not error. As Plaintiff correctly points out, the new regulations require ALJs to consider *all* medical opinions in the record, not just those from *acceptable* medical sources. *See* 20 C.F.R. § 404.1520c(c). But that does not mean the status of the medical source is not relevant to the ALJ's evaluation of the opinion. In fact, the medical source's specialization (or lack thereof) is one such factor the ALJ must consider. *Id.* Therefore, it was not error for the ALJ to recognize that the physical therapist was not an acceptable medical source.

evidence in the record, and her explanations for same were supported by substantial evidence and adequate to permit meaningful judicial review. Therefore, the final decision of the Commissioner of Social Security is **AFFIRMED,** and this matter is **DISMISSED.**

BY THE COURT:

_*s/Pamela A. Carlos*_________
PAMELA A. CARLOS
U.S. Magistrate Judge